**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| GERARD W. TRAYNOR, | |
| Plaintiff, | Civil Action No. 21-7463 (GC) (TJB) |
| v. | **MEMORANDUM OPINION** |
| BRADLEY BILLHIMER *et. al.*, | |
| Defendants. | |

**CASTNER, District Judge**

  This matter comes before the Court upon Defendants Ocean County Prosecutor's Office ("OCPO"), Bradley Billhimer ("Billhimer"), Joseph D. Coronato ("Coronato"), and Vincent A. Petrecca's ("Petrecca") (collectively "OCPO Defendants") and Mancini Realty Company ("Mancini Realty") and Joseph H. Mancini's ("Mancini") (collectively "Mancini Defendants") Motions to Dismiss Plaintiff Gerard W. Traynor's ("Plaintiff") Second Amended Complaint (ECF No. 19). (ECF Nos. 29, 27, respectively.)  Plaintiff opposed both Motions (ECF Nos. 32, 33), and Defendants replied (ECF Nos. 34, 37).  After consideration of the Parties' submissions, the Court decides the Parties' Motions without oral argument pursuant to Local Civil Rule 78.1.  For the reasons outlined below, all Counts against OCPO Defendants are dismissed without prejudice and Counts One, Two, and Three against Mancini Defendants are dismissed without prejudice.  Count Four brought only against Mancini Defendants is also dismissed without prejudice.

## I.   **BACKGROUND**[1]

### A.   **Factual Background**

Plaintiff is a former police sergeant with the Long Beach Township Police Department ("LBTPD") and a private attorney. (*See* Second Am. Compl. ¶¶ 5, 21, 30, ECF No. 19.)  Plaintiff also served as the President of Lodge No. 5 of the Fraternal Order of Police, a minority union for police officers of Long Beach Township. (*Id.* ¶ 5.)

In November 2013, Plaintiff was asked by the State Fraternal Order of Police to speak at a panel about Hurricane Sandy. (*Id.* ¶ 12.)  Plaintiff spoke on the panel in his capacity as a representative of the State Fraternal Order of Police, not in his capacity as a Long Beach Township Police Officer. (*Id.* ¶ 13.)  "The following week the *Asbury Park Press/Beach Haven Times* ran an article stating that Southern Ocean County was underprepared for Hurricane Sandy." (*Id.* ¶ 14.) Shortly thereafter, in response to the article, Mancini, who is the Mayor of Long Beach Township ("LBT") and a private realtor,[2] reached out to Plaintiff. (*See id.* ¶¶ 6, 15.)  Mancini berated Plaintiff and accused him of throwing Mancini "under the bus" while Plaintiff spoke at the Fraternal Order of Police panel. (*See id.* ¶ 15.)  Specifically, Mancini said to Plaintiff: "[y]ou're done. Your career's over. Don't ask for another [f]**king thing. You're [f]**king done." (*Id.*)

In the years that followed, Plaintiff alleges that Mancini, Police Chief Anthony Deely, LBT, and LBTPD retaliated against him.[3] (*Id.* ¶ 16.)  Sometime during this period, Plaintiff contested

---

[1] For the purpose of considering the instant Motions, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

[2] Mancini is both the Mayor of LBT and the owner of Mancini Realty Company, a buyer and seller of real estate properties on Long Beach Island, New Jersey. (Second Am. Compl. ¶¶ 6, 8.)

[3] LBT, LBTPD, and Police Chief Anthony Deely are not parties to this lawsuit.  Instead, Plaintiff brought a separate action against those Defendants, and Mancini in his capacity as Mayor, in 2018. (Second Am. Compl. ¶ 17.)  That case remains before this Court. *Traynor v. Mancini, et al.*, No. 18-7972 (D.N.J. filed Apr. 17, 2018).

his failure to be promoted to Lieutenant. (*Id.* ¶ 18.) As a result of Plaintiff contesting his failure to

be promoted, OCPO issued a directive that attorneys who were police officers had to notify their

Police Chiefs of any matters for which they would be going to court. (*See id.*) As only three police

officers in Ocean County were attorneys, and the other two were Police Chiefs, this directive in

essence only applied to Plaintiff. (*Id.*) Also in this period, LBTPD began investigating Plaintiff

for a variety of violations including "not properly responding to radio calls or . . . missing while

on duty." (*Id.* ¶¶ 19-22.) In an internal investigation report filed against Plaintiff, LBTPD stated

that a basis for disciplining Plaintiff was his having stopped at his law office for over three minutes

to use the bathroom while on duty. (*See id.* ¶ 22.)

Around October 12, 2018, the internal investigation was turned over from LBTPD to OCPO.

(*Id.* ¶ 23.) Such investigations are typically turned over to the New Jersey State Police. (*Id.*)

Thereafter, LBTPD and OCPO applied for and were granted a data warrant for all of Plaintiff's

"personal cell phone records, including call detail records, cell site information, subscriber

information, all available picture imaging and text messaging for the time period of January 1,

2018[,] through October 10, 2018." (*Id.* ¶ 24.)[4] After OCPO took over Plaintiff's internal

investigation, Petrecca insisted on taking over the prosecution. (*Id.*)

The internal investigation concluded that Plaintiff improperly accessed motor vehicle

records when he looked up his daughter and a friend on his LBTPD computer. (*See id.* ¶ 26.)

Neither his daughter nor his friend was aggrieved by this search, but nevertheless, on April 1, 2019,

---

[4] Plaintiff generally alleges the warrant was overly broad and based on incorrect information.
(Second Am. Compl ¶ 24.) Plaintiff then avers "Coronato has been alleged to hav[e] ordered a[n]
employee to alter a report to obtain a warrant" in a different matter. (*Id.*) Plaintiff also generally
states that Petrecca "has engaged in harassment, physical attack on an employee, [and]
unwarranted targeting of political officials[.]" (*Id.* ¶ 24.)

LBTPD arrested Plaintiff for the violation.[5] (*Id.* ¶¶ 26-27.)  LBTPD arrested Plaintiff after he changed into his police uniform so that they could take away his badge and weapon even though it had the opportunity to arrest him before he got in uniform. (*Id.* ¶ 27.)  LBT and LBTPD told the public that Plaintiff's arrest was for "unspecified computer crimes." (*Id.*)  Other officers in New Jersey committed similar offenses, i.e., use of a police department database for personal inquiries, but their matters were remanded for administrative review, and they were not arrested. (*Id.* ¶ 28.)

On September 5, 2019, subsequent to Plaintiff's arrest, he was terminated. (*Id.* ¶ 30.) Plaintiff ultimately pled guilty to the offense with which he was charged. (*Id.* ¶ 32.)  In the time since his arrest and guilty plea, Plaintiff has continued his work as a private attorney. (*See id.* ¶¶ 32-34.)  In that time, Mancini Defendants acted in concert with Mancini in his capacity as Mayor of LBT to interfere with Plaintiff's "property interest and liberty interest in his contractual relations with his clients." (*Id.* ¶ 34.)  Specifically, in at least one instance, the Mancini Defendants, acting as realtors, refused to do business with Plaintiff's clients because Plaintiff was the clients' attorney.[6] (*Id.* ¶¶ 42, 58.)  The Mancini Defendants did this in retaliation for Plaintiff's comments made in November 2013. (*See id.* ¶¶ 12, 35.)

---

[5] Plaintiff also avers that his "access of the police computer was not, as a matter of law, a violation of N.J.S.A. § 2C:20-25e." (Second Am. Compl. ¶ 54.)

[6] Plaintiff alleges that Mancini Defendants "acted in concert with" Mancini as Mayor of LBT when telling real-estate clients not to use Plaintiff's services for real-estate transactions. (Second Am. Compl. ¶¶ 33-34.)  Plaintiff makes no allegation that Mancini was specifically acting in his role as Mayor of LBT when such statements were made to Plaintiff's clients. (*See generally id.*)

### B.     Procedural Background

On March 30, 2021, Plaintiff filed his original Complaint in this matter. (Compl., ECF No. 1.)  After the Mancini Defendants moved to dismiss his original Complaint (ECF No. 3), Plaintiff filed his first Amended Complaint. (First Am. Compl., ECF No. 4.)  The Mancini Defendants and the OCPO Defendants moved to dismiss the First Amended Complaint. (ECF Nos. 6, 11.)  On December 6, 2021, Plaintiff again amended his Complaint. (Second Am. Compl.)  Plaintiff's Second Amended Complaint brings four Counts, the first three of which are brought against all Defendants and the fourth of which is brought against only the Mancini Defendants: (1) Retaliation under the First and Fourteenth Amendments of the United States Constitution through 42 U.S.C. § 1983; (2) Violation of Article I, Paragraphs 6 and 18 of the New Jersey Constitution through the New Jersey Civil Rights Act ("NJCRA"); (3) Selective Prosecution under the First and Fourteenth Amendments of the United States Constitution through 42 U.S.C. § 1983; and (4) Tortious Interference with Contract and Prospective Business Relationships and Economic Advantage against Mancini Defendants.  The Court now considers Defendants' motions to dismiss Plaintiff's Second Amended Complaint.

## II.    <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 8(a)(2)[7] "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court

---

[7] All references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).  Second, the court must accept as true all of plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).  A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).  On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III.   **DISCUSSION**

For the reasons set forth below, all Counts against OCPO Defendants are dismissed without prejudice and Counts One, Two, and Three against Mancini Defendants are dismissed without prejudice.   Count Four brought only against Mancini Defendants is also dismissed without prejudice.

### A.   **Counts One and Two–Retaliation under 42 U.S.C. § 1983 and NJCRA**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for a violation of his constitutional rights. *Rahman v. Taylor*, No. 10-367, 2010 WL 2178938, at *5 (D.N.J. May 27, 2010).  Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to

> be subjected, any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any rights, privileges,
> or immunities secured by the Constitution and laws, shall be liable
> to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress . . ..

42 U.S.C. § 1983. Thus, to "state a claim under § 1983, a plaintiff must allege the violation of a

right secured by the Constitution and laws of the United States and must show that the alleged

deprivation was committed by a person acting under the color of state law." *West v. Atkins*, 487

U.S. 42, 48 (1988). Actions under "color of state law" are equivalent to "state action" under the

Fourteenth Amendment. *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (citations omitted).

"Thus, a plaintiff seeking to hold an individual liable under § 1983 must establish that [he] was

deprived of a federal constitutional or statutory right by a state actor." *Kach v. Hose*, 589 F.3d 626,

646 (3d Cir. 2009) (citation omitted). To state a First Amendment retaliation claim, a plaintiff must

allege (1) constitutionally protected conduct, (2) retaliatory action by a state actor "sufficient to

deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link

between the constitutionally protected conduct and the retaliatory action." *Bostrom v. N.J. Div. of

Youth & Family Servs.*, 969 F. Supp. 2d 393, 415 (D.N.J. 2013).

### 1.    *As Against OCPO Defendants*

#### a.    OCPO Itself

Sovereign immunity prevents this Court from adjudicating the claims brought against

OCPO. "Eleventh Amendment immunity protects not only states but also state agencies, as long

as the state is the real party in interest." *Beightler v. Off. of Essex Cty. Prosecutor*, 342 F. App'x

829, 832 (3d Cir. 2009) (internal quotation marks and citation omitted). "In general, to determine

whether a governmental entity is an arm of the state for Eleventh Amendment purposes, a court

must consider the three '*Fitchik* factors': (1) whether payment of a judgment resulting from the

suit would come from the state treasury[;] (2) the status of the entity under state law[;] and (3) the

entity's degree of autonomy." *Ong v. Superior Ct. of Hudson Cty.*, No. 16-6777, 2018 WL 324722, at *5 (D.N.J. Jan. 8, 2018) (citing *Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989) (en banc)), *aff'd*, 760 F. App'x 133 (3d Cir. 2018).  Typically, in this District, the *Fitchik* inquiry is satisfied where a county prosecutor's office is "performing its core functions of investigating and prosecuting crime" as opposed to performing otherwise administrative tasks. *Id.* at *5; *see also Est. of Bardzell v. Gomperts*, 515 F. Supp. 3d 256, 267-68 (D.N.J. 2021). The Third Circuit has held, however, that courts must conduct a full *Fitchik* analysis before concluding a county prosecutor's office is entitled to sovereign immunity. *Est. of Lagano v. Bergen Cty. Prosecutor's Off.*, 769 F.3d 850, 857-58 (3d Cir. 2014). In so holding, the Third Circuit rejected this District's tendency to consider the *Fitchik* inquiry satisfied simply by concluding that a "county prosecutor engaged in classic prosecutorial functions." *Id.*

In *Estate of Bardzell v. Gomperts*, Judge McNulty persuasively concludes that, functionally, the *Fitchik* analysis as applied to county prosecutor's offices in this District typically results in a finding of sovereign immunity whenever those offices are investigating or prosecuting crime. *Cf. Est. of Bardzell*, 515 F. Supp. 3d at 267-69 ("Courts in this district have routinely held that county prosecutors, when pursuing their core functions, are entitled to Eleventh Amendment immunity," notwithstanding the holding in *Lagano*.) Here, the Court will conduct a full *Fitchik* analysis as to OCPO and utilizes Judge McNulty's analysis in *Bardzell* because it mirrors the analysis this case requires.

*Fitchik* factor one:

> [A]sks whether the State would find itself responsible for damages if the plaintiff prevailed in this case. The New Jersey Supreme Court has ruled definitively that when county prosecutors act in their law enforcement or investigatory capacity, "they act as 'agents' and 'officers' of the State, qualifying as State employees under N.J.S.A. 59:1–3 for the purpose of determining vicarious liability under the

8

> [New Jersey Tort Claims Act]." [The Court] therefore take[s] that
> inquiry—whether Defendants were engaged in law enforcement or
> investigatory functions—as an important guide to the first step of
> the *Fitchik* analysis.

*Id.* (citations omitted). Here, OCPO was clearly performing its core functions of investigating

crime when it investigated and prosecuted Plaintiff. In fact, essentially all of the allegations against

OCPO pertain to its actions in investigating and prosecuting Plaintiff under N.J.S.A. § 2C:20-25e.

(*See, e.g.* Second Am. Compl ¶¶ 23 (alleging OCPO "assumed the lead investigatory role" in an

investigation turned over to it by LBTPD in what it "deemed a criminal matter"); 25 ("OCPO . . .

began an investigation of [Plaintiff's] use of the police computer"); 26 ("[t]he result of the

investigation was the finding that [Plaintiff] had improperly access[ed] motor vehicle records");

32 (stating Plaintiff "plead guilty to N.J.S.A[.] 2C:20-25(c)" (emphasis omitted).) Therefore, the

first *Fitchik* factor is satisfied.

The second *Fitchik* factor:

> [C]oncerns the status of the [OCPO] under state law . . . "The office
> of county prosecutor in the State of New Jersey is a constitutionally
> established office" . . . N.J. Const. art. VII, § 2, ¶ 1 ("County
> prosecutors shall be nominated and appointed by the Governor with
> the advice and consent of the Senate. Their term of office shall be
> five years, and they shall serve until the appointment and
> qualification of their respective successors.").

*Est. of Bardzell*, 515 F. Supp at 269. OCPO's status as a "constitutionally established office"

satisfies the second *Fitchik* factor.

Finally:

> The third *Fitchik* factor considers the degree of [OCPO]'s autonomy
> from the State. That factor is satisfied where, as here, "a county
> prosecutor acting with prosecutorial authority is not an autonomous
> entity separate from the State." Indeed, in *Wright*, the New Jersey
> Supreme Court noted the prosecutor's relative independence in local
> administrative matters, but explained that, in contrast, "a prosecutor
> whose actions do involve the enforcement of the criminal laws does

9

> not enjoy a comparable degree of autonomy from the State government." In the end, "the [State] Attorney General has the ultimate responsibility in matters related to the enforcement of the State's criminal laws that have been legislatively delegated to county prosecutors."

*Id.* at 269 (citations omitted).  For these reasons, the third *Fitchik* factor is satisfied.

As the *Fitchik* factors are satisfied, sovereign immunity attaches to OCPO.  Counts One and Two against OCPO are, accordingly, dismissed without prejudice so they may be reasserted in any forum empowered to hear them.[8]  Moreover, "[a] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is not different from a suit against the State itself." *Est. of Bardzell*, 515 F. Supp. 3d at 267 n.6 (quoting *Allen v. N.J. State Police*, 974 F.3d 497, 506 (3d Cir. 2020)). Therefore, sovereign immunity also attaches to Billhimer, Coronato, and Petrecca in their official capacities for OCPO. Counts One and Two against Billhimer, Coronato, and Petrecca in their individual capacities are analyzed below.

### b.  Individual OCPO Defendants

As to Billhimer, Coronato, and Petrecca in their individual capacities ("Individual Defendants"), Plaintiff fails to plead sufficient factual allegations to sustain his retaliation claim. A plaintiff "must allege facts that establish each individual [d]efendant's liability for the misconduct alleged." *Branch v. Christie*, No. 16-2467, 2018 WL 337751, at *3 (D.N.J. Jan. 8, 2018) (alteration in original) (internal quotation marks and citation omitted).  "When a number of different defendants are named in a complaint, plaintiff cannot refer to all defendants who occupied different positions and presumably had distinct roles in the alleged misconduct without specifying

---

[8] Count Three is also dismissed against OCPO on the same grounds.

which [d]efendants engaged in what wrongful conduct." *Id.* (alteration in original) (internal quotation marks and citation omitted).

In bringing his claims, Plaintiff refers only to "Defendants" without distinguishing different individuals, let alone groups of Defendants, i.e., Mancini Defendants, OCPO Defendants, or Individual Defendants. (*See*, *e.g.* Second Am. Compl. ¶¶ 39 ("Defendants were acting under color of law at all relevant times hereto"); 54 ("Defendants knew that they selectively reviewed Plaintiff's police department computer history").) At one point, Plaintiff even refers to LBTPD, a nonparty to this case, as a "Defendant" in this matter. (*See Id.* ¶ 53 (referring to "Defendants LBTPD's and OCPO's decision to engage in selective prosecution").) For these reasons, Plaintiff's claims against Individual Defendants cannot proceed until Plaintiff provides more specificity as to whom he is accusing of what.

Perhaps more importantly, Plaintiff fails to plead facts sufficient to show a retaliatory action by Individual Defendants against Plaintiff. Most of Plaintiff's allegations are directed at OCPO and non-party LBTPD. (*See generally* Second Am. Compl.) Significantly, Billhimer is not mentioned anywhere in the Second Amended Complaint other than in the "Parties" section where he is listed alongside OCPO. (*Id.* ¶ 9.) Moreover, only one specific allegation is brought against Coronato, where Plaintiff alleges Coronato "ordered a[n] employee to alter a report to obtain a warrant" in a separate case.[9] (*Id.* ¶ 24.) Finally, Petrecca is alleged only to have "insisted on taking over the prosecution of Defendant despite the fact that [matters like Plaintiff's were] normally not handled by the prosecutor's office." (*Id.*) None of these allegations, when viewed in the light most

---

[9] Plaintiff also provides in the "Parties" section of his Second Amended Complaint that Coronato was an Ocean County Prosecutor and approved Plaintiff being singled out for prosecution. (Second Am. Compl. ¶ 10.) Plaintiff provides no facts to substantiate this conclusion.

favorable to Plaintiff, can sustain a retaliation claim against any Individual Defendant.  As such, Count One is dismissed without prejudice against Individual Defendants.

Similarly, Count Two against Individual Defendants is dismissed without prejudice.  The NJCRA "was modeled after 42 U.S.C. § 1983[] and creates a private cause of action for violations of civil rights secured under the New Jersey Constitution." *Greenman v. City of Hackensack*, 486 F. Supp. 3d 811, 837 (D.N.J. 2020).  In the context of First Amendment retaliation claims, this District views NJCRA claims as analogous to § 1983 claims. *See id.*  With the Parties having offered no arguments to the contrary, Count Two is dismissed against Individual Defendants for the same reasons as Count One.

### 2.     As Against Mancini Defendants

"[A] private party will be treated as a state actor if any of the following tests are met: (1) 'the private entity . . . exercised powers that are traditionally the exclusive prerogative of the state'; (2) 'the private party . . . acted with the help of or in concert with state officials'; or (3) 'the state has so far insinuated itself in a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.'" *Life Educ. Couns., Inc. v. CBS Outdoor, Inc.*, No. 11-1835, 2011 WL 3915631, at *3 (D.N.J. Sept. 2, 2011) (citing *Kach*, 589 F.3d at 646).  "Generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Willson v. Yerke*, 604 App'x 149, 150 n.4 (3d Cir. 2015) (alteration omitted) (citing *West*, 487 U.S. at 50).  The "under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation marks and citations omitted).  In other words, it is well settled that "an otherwise private tort is not committed under color of law simply because the tortfeasor is an employee of the state.

12

Rather, in order for the tortfeasor to be acting under color state law, his act must entail misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1150-51 (3d Cir. 1995) (alteration omitted) (internal quotation marks omitted) (quoting *United States v. Classic*, 313 U.S. 299, 326, 361 (1941).

Here, Plaintiff alleges that Mancini Defendants, both private actors in this lawsuit, acted "in concert" with Mancini in his capacity as Mayor of LBT to tell Plaintiff's clients not to work with him. Simply put, nothing in the Second Amended Complaint can be read as alleging Mancini Defendants acted under color of state law where Mancini, in his private capacity as a realtor, told other private parties, Plaintiff's clients, not to work with Plaintiff, a private attorney. (*See* Second Am. Compl. ¶¶ 34, 35.) Plaintiff's allegations that Mancini Defendants "acted in concert" with Mancini as Mayor are not only unsupported by fact but also fail as a matter of law where Plaintiff must show that Mancini abused the power he possessed by virtue of being "clothed with the authority of state law." (*Id.* ¶ 42; *Mark*, 51 F.3d at 1150-51.) Just because Mancini is also Mayor of LBT does not mean that everything Mancini does as a realtor is an action of the State. *Mark*, 51 F.3d at 1150-51 ("[A]n otherwise private tort is not committed under color of law simply because the tortfeasor is an employee of the state"). For these reasons, Plaintiff's allegations fail to show Mancini Defendants acted under color of state law, and as such, Count One against Mancini Defendants is dismissed without prejudice.

Moreover, because the "color of law" requirement also applies to Plaintiff's NJCRA allegations, Count Two is dismissed without prejudice against Mancini Defendants. *See Perez v. Zagami, LLC*, 94 A.3d 869, 870, 877 (N.J. 2014) (stating the NJCRA was intended to be a state

analogue to § 1983 actions and holding "a private NJCRA cause of action only may be pursued against persons acting under color of law" as understood under § 1983).

### B.    Count Three–Selective Prosecution under 42 U.S.C. § 1983

#### 1.    As Against Individual Defendants[10]

Plaintiff cannot sustain his selective prosecution claim under § 1983 against the individual OCPO Defendants because Plaintiff did not allege that his conviction by the individual OCPO Defendants was invalidated. *See Heck v. Humphrey*, 512 U.S. 477, 487 (1994) (holding "[a] claim for damages [that bears only a] relationship to a conviction or sentence that has not been . . . invalidated is not cognizable under § 1983"). Here, Plaintiff alleges that his access to a police computer that led to his prosecution and arrest was not a criminal violation as a "matter of law." (Second Am. Compl. ¶ 54.) Should the Court credit this allegation, the Court would need to find that Plaintiff's outstanding criminal judgment, a guilty plea to illegally accessing a police computer under N.J. Stat. Ann. § 2C:20-25e, is invalid. Under Supreme Court precedent, however, such an outcome is untenable because Plaintiff did not allege that his plea has been invalidated. *Heck*, 512 U.S. at 487 (holding that if judgment in favor of a plaintiff in a § 1983 suit "would necessarily imply the invalidity of his conviction[,] the complaint must be dismissed unless the plaintiff can demonstrate that the conviction . . . has already been invalidated"); *see also United States v. Davis*, 39 F. App'x 702, 703 (3d Cir. 2002) ("Generally, when the accused in a criminal proceeding enters an unconditional plea of guilt, 'he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.'") (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973))). As such, the Court dismisses Count Three.

---

[10] For the reasons stated earlier in this Opinion, this Count is dismissed against OCPO and the individual OCPO Defendants in their official capacity on sovereign immunity grounds.

The Court notes Plaintiff's assertion that he "intends to move to set aside his plea and conviction under *Van Buren v. United States*," a 2021 United States Supreme Court decision. (Pl.'s Opp'n Br. 21, ECF No. 32 (citing *Van Buren v. United States*, 141 S. Ct. 1648 (U.S. 2021).)  It appears from his briefing that Plaintiff is concerned that the statute of limitations on his claim against OCPO Defendants will expire before he can invalidate his plea. (*See* Pl.'s Opp'n Br. at 20-21.)  While the Court is sympathetic to Plaintiff's situation, Plaintiff's reliance on *Van Buren* for purposes of offering future recourse is insufficient to save Plaintiff's claim because *Heck* mandates that a conviction must "already [have] been invalidated" for a complaint to continue. *Heck*, 512 U.S. at 487.  The Court, however, will dismiss Count Three without prejudice against Individual Defendants in the event Plaintiff can successfully invalidate his plea before the statute of limitations expires.

### 2.    *As Against Mancini Defendants*

While Plaintiff brings Count Three for selective prosecution against all Defendants, no specific allegations are pled to implicate the Mancini Defendants. (*See generally* Second Am. Compl. ¶¶ 50-54.)  Moreover, a selective prosecution claim must be directed at a party capable of instituting a prosecution. *See United States v. Salahuddin*, No. 10-104, 2012 WL 2952436, at *30 (D.N.J. July 19, 2012) (citing *United States v. Berrigan*, 482 F.2d 171, 175 (3d Cir. 1973)). Common-sense dictates that neither of the Mancini Defendants, a realtor and realty company, have any prosecutorial power. As such, Count Three against the Mancini Defendants is dismissed without prejudice.

### C.    **Count Four–Tortious Interference Against Mancini Defendants**

The Court cannot exercise supplemental jurisdiction over Plaintiff's remaining state-law claim: Tortious Interference with Contract and Prospective Business Relationships and Economic Advantage. (Second Am. Compl. ¶¶ 55-59.)

Plaintiff's Count Four does not arise out of the same case or controversy as the federal claims in this case. *See In re Prudential Ins. Co. Am. Sales Prac. Litig.*, 148 F.3d 283, 301 (3d Cir. 1998) (making clear that "any exercise of supplemental jurisdiction must meet the requirements of Article III's 'case or controversy' standard"). For a claim to arise out of the same case or controversy, thus allowing an exercise of supplemental jurisdiction, non-federal claims brought in the absence of diversity jurisdiction must share a "common nucleus of operative facts" with the claims supporting the court's original jurisdiction. *See id.* at 300.

Here, Plaintiff and Mancini Defendants are not diverse parties and Count Four is a state-law claim. (Second Am. Compl. ¶¶ 5-7.) As such, supplemental jurisdiction must attach for this Court to have jurisdiction over Count Four. Count Four, however, does not share a "common nucleus of operative facts" with Counts One through Three, the federal claims over which the Court has original jurisdiction. Specifically, whether OCPO Defendants and Mancini Defendants violated Plaintiff's constitutional right to free speech where they allegedly retaliated against him for comments made in 2013 is a separate and distinct occurrence to private-party-realtor, Mancini, allegedly interfering, sometime after 2019, with Plaintiff's contracts with his clients. *See Hayden v. Westfield Ins. Co.*, 586 F. App'x 835, 840 (3d Cir. 2014) (affirming a district court's finding that a claim did not arise out of a common nucleus of operative facts where "differences in time and subject matter" existed between claims). For these reasons, the Court finds that an exercise of supplemental jurisdiction is improper.

Even if Plaintiff's tortious interference claim did arise out of a "common nucleus of operative facts," the Court would decline to exercise supplemental jurisdiction. As all of Plaintiff's federal claims have been dismissed and there is no diversity of citizenship between Plaintiff and the Mancini Defendants, the Court has discretion to decline adjudicating Plaintiff's sole state-law

claim. 28. U.S.C. § 1367(c)(3) (stating a district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction").

For these reasons, Count Four of Plaintiff's Second Amended Complaint is dismissed without prejudice so that Plaintiff may bring Count Four in state court if he so chooses.

## IV.   <u>CONCLUSION</u>

For the reasons outlined above, all Counts against OCPO Defendants are dismissed without prejudice, and Counts One, Two, and Three against Mancini Defendants are dismissed without prejudice.   Count Four, brought only against Mancini Defendants, is also dismissed without prejudice.

_Georgette Castner_

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE

17